**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| G&S BESHAY TRADING CO., LLC,<br><br>         Plaintiff,<br><br>    v.<br><br>7-ELEVEN, INC.,<br><br>         Defendant. | Case No. 18cv3909 (EP) (JRA)<br><br>**OPINION** |

**PADIN, District Judge.**

  This case involves the breakdown of a franchise relationship between Plaintiff/franchisee G&S Beshay Trading Co., LLC ("Beshay Co."), its owner, George Beshay ("Mr. Beshay") (collectively, the "Beshay Parties"), and Defendant/franchisor 7-Eleven, Inc. ("7-Eleven"). Beshay Co. sued 7-Eleven, which counterclaimed against Beshay Co. and Mr. Beshay. D.E. 20. On summary judgment, Judge Salas[1] dismissed Beshay Co.'s claims and found issues of fact remained with respect to calculating 7-Eleven's counterclaims damages. D.E. 59. 7-Eleven now moves for summary judgment as to damages on its two counterclaims. D.E. 82. The Court decides the motion on the papers. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78(b). For the reasons below, the Court will **GRANT** the motion and **ENTER JUDGMENT** on 7-Eleven's counterclaims in favor of 7-Eleven and against Beshay Co. and Mr. Beshay, jointly and severally, in the amount of $42,123.88.

---

[1] The case was reassigned to the undersigned on July 14, 2022. D.E. 64.

I.      BACKGROUND[2]

A.  Factual Background

On November 25, 2015, 7-Eleven entered into two agreements: (1) a franchise agreement with Beshay Co. for a 7-Eleven store ("Store") in New Jersey ("Franchise Agreement"); and (2) a personal guaranty with Mr. Beshay, the sole owner of Beshay Co., for performance of Beshay Co.'s obligations under the Franchise Agreement ("Guaranty Agreement") (collectively, "Agreements"). *Id.* 2:14-24.

In December 2015, Beshay Co. began operating the Store. *Id.* 4:18. From April 2016 to January 2017, Beshay Co. received six notices of material breach of the Franchise Agreement from 7-Eleven. *Id.* 5:1-4. These breaches were: (1) failing to maintain the Store's required minimum net worth of $15,000 for March 2016;[3] (2) "failing to timely deposit the Store's receipts seventeen separate times from September 1 to 16 and 19, 2016";[4] (3) "failing to timely deposit the Store's receipts on September 17 to 18 and 20 to 25, 2016";[5] (4) failing to maintain the Store's required minimum net worth for September 2016;[6] (5) "failing to submit cash reports from December 1 through 20, 2016";[7] and (6) "failing to maintain the cleanliness and image of the Store and . . . selling food past its code date or shelf life."[8] *Id.* 5:5-25.

Under the Franchise Agreement,

> if [Beshay Co.] has been served with three separate notices of any
> material breach within the two years before a fourth material breach,
> 7-Eleven may terminate the [Franchise Agreement] immediately

---

[2] This section derives mainly from Judge Salas' Oral Opinion on 7-Eleven's previous summary judgment motion. D.E. 59 ("Salas Op.").
[3] Notice received April 27, 2016. *Id.* 5:5-6.
[4] Notice received September 30, 2016. *Id.* 5:9-12.
[5] Notice also received September 30, 2016. *Id.* 5:12-15.
[6] Notice received December 9, 2016. *Id.* 5:15-18.
[7] Notice received January 4, 2017. *Id.* 5:19-21.
[8] Notice also received January 4, 2017. *Id.* 5:22-25.

2

> upon notice to [Beshay Co.] of the fourth material breach . . . without any opportunity to cure, whether or not such material breaches are of the same or different nature and whether or not such material breaches have been cured by [Beshay Co.] after notice by 7-Eleven.

*Id.* 23:12-20. Thus, in accordance with the Franchise Agreement, on January 4, 2017,[9] 7-Eleven notified Beshay Co. that "it lost any right to cure its material breaches and that . . . [7-Eleven] would terminate the [F]ranchise [A]greement effective on the sixty-third day following receipt of said notices." *Id.* 6:1-6.

On January 11, 2017, Beshay Co. willingly returned the Store's keys to a 7-Eleven representative. *Id.* 30:3-12; *see also* D.E. 82-1 ("7-Eleven's SOF")[10] ¶ 7; D.E. 83-1 at 1-14 ("Beshay SOF Response") ¶ 7. Then, on January 17, 2017, "[7-Eleven's] counsel advised [Beshay Co.] that if it did not respond . . . within fifteen days, [7-Eleven] would treat [Beshay Co.'s] conduct [on January 11] as termination by voluntary surrender and abandonment." Salas Op. 6:15-19. Beshay Co. did not respond. *Id.* 6:20. "Accordingly, on February 6, 2017, [7-Eleven's] attorney notified [Beshay Co.] via mail that (i) the proposed settlement was withdrawn, and (ii) the [F]ranchise [A]greement was terminated by way of [Beshay Co.'s] voluntary surrender and abandonment." *Id.* 6:21-24.

### B.  Procedural Background

Beshay Co. filed a three-count complaint in state court against 7-Eleven for fraud in the inducement (Count One), breach of the implied covenant of good faith and fair dealing (Count Two), and breach of contract (Count Three). D.E. 1-2. 7-Eleven timely removed to this Court and moved to dismiss the complaint in its entirety, which Judge Salas granted without prejudice. D.E.s 1, 4, 7. After Beshay Co. amended the complaint, D.E. 19 ("Am. Compl." or "Amended

---

[9] Along with the fifth and six notices of material breach.
[10] Statement of Facts.

Complaint"), 7-Eleven answered and asserted two counterclaims: (1) breach of the Franchise Agreement against Beshay Co. (Count One) and (2) breach of the Guaranty Agreement against Mr. Beshay (Count Two), D.E. 20 ("Counterclaims").

7-Eleven later moved for summary judgment on the Amended Complaint and Counterclaims, the Beshay Parties opposed, and 7-Eleven replied. D.E.s 35-2, 40, 43. Judge Salas granted the motion in part and dismissed the Amended Complaint but denied summary judgment on the Counterclaims because "questions of fact remain[ed] with respect to [7-Eleven]'s damages calculations." Salas Op. 31:5-7.

On October 5, 2023,[11] the Court granted 7-Eleven leave to move for summary judgment as to the remaining issue of damages. D.E. 81. 7-Eleven so moved. D.E. 82-2 ("Mot." or "Motion"). The Beshay Parties oppose. D.E. 83 ("Opp'n" or "Opposition"). 7-Eleven replies. D.E. 84 ("Reply").

## II.    LEGAL STANDARDS

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over nonmaterial facts will not preclude a court from granting summary judgment. *See id.*

The moving party has the initial burden of showing the basis for its motion and demonstrating that there is an absence of a genuine issue of material fact. *See Celotex Corp. v.*

---

[11] The case was reassigned to the undersigned on July 14, 2022. D.E. 64.

4

*Catrett*, 477 U.S. 317, 323 (1986).  The moving party must support its motion by citing to specific materials in the record.  Fed. R. Civ. P. 56(c)(1)(A).

If a moving party adequately supports its motion, then the burden shifts to the nonmoving party to "go beyond the pleadings" and designate specific facts on the record that demonstrate a genuine dispute for trial exists.  *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted).  Specifically, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party.  *Anderson*, 477 U.S. at 250.  If the nonmoving party fails to provide such evidence, or where the "evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment."  *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50).  However, "[i]f reasonable minds could differ as to the import of the evidence," summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250-51.

In reviewing a motion for summary judgment, a court "may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  *Marina v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).  But if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case[,]" then there is "no genuine issue as to any material fact[,]" and summary judgment is appropriate.  *Celotex Corp.*, 477 U.S. at 322.

### III. ANALYSIS

#### A. The Law of the Case Doctrine Precludes Most of the Beshay Parties' Opposition

"The law of the case doctrine is . . . triggered when one court is faced with a ruling on the merits by a different and co-equal court on an identical issue."  *Lombardi v. Masso*, 207 N.J. 517,

539 (2011). The doctrine "militates against courts re-deciding issues of law that were earlier resolved in the same case, either expressly or by necessary implication." *Frank Briscoe Co. v. Travelers Indem. Co.*, 65 F. Supp. 2d 285, 293 (D.N.J. 1999). A court "should be loathe" to revisit prior decisions "of its own or of a coordinate court . . . in the absence of extraordinary circumstances[,] such as where the initial decision was clearly erroneous and would work a manifest injustice." *Pub. Int. Rsch. Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997) (internal quotation marks and citation omitted).

7-Eleven argues, and the Court agrees, that the Opposition and its supplemental materials retread accusations that the Salas Opinion already resolved, mainly whether 7-Eleven's termination of the Franchise Agreement was proper. Reply at 5-8. For example, the Beshay Parties attempt to revive the breach of contract claim against 7-Eleven for improper termination of the Franchise Agreement because they "can prove [the] case about the 7-Eleven [material breach] notices" being meritless, either because they did not occur and/or were not material. Opp'n at 3; *see also* Beshay SOF Response ¶ 5 (same); D.E. 83-2 ("Beshay Decl.") ¶ 2 (same). But the Salas Opinion already determined otherwise. *See* Salas Op. 23:21-25:21 (rejecting Beshay Co.'s argument that a jury should determine whether the alleged breaches were material and/or occurred and finding no genuine dispute of material fact that 7-Eleven's termination of the Franchise Agreement complied with its terms).[12]

---

[12] The Beshay Parties also recycle accusations of 7-Eleven's bad faith and ill motive, such as 7-Eleven discriminating against Mr. Beshay and fabricating the Store's cash shortages. *See, e.g.*, Beshay SOF Response ¶¶ 12, 14 (accusing 7-Eleven of "creat[ing] false cash shortages to steal [Mr. Beshay's] portion of the profits" and "tampering with the [Store's] numbers"); D.E. 82-1 at 14-29 ("Beshay Counter-SOF") ¶ 50 (alluding to 7-Eleven's discrimination against Mr. Beshay because he is a minority). The Salas Opinion found these accusations meritless. *See* Salas Op. 20:20-21:1 (finding no evidence supported the "evolving theory" of discrimination); *id.* 29:8-30:1 (finding no evidence 7-Eleven engaged in any conduct with ill motive or bad faith).

Additionally, the Beshay Parties claim that Mr. Beshay did not voluntarily abandon the Store on January 11, 2017, because a 7-Eleven representative threatened Mr. Beshay to return the Store's keys, and thus 7-Eleven prematurely terminated the Franchise Agreement. Beshay SOF Response ¶¶ 7, 31; Beshay Decl. ¶¶ 3-4. However, the Salas Opinion found that (1) beyond "Mr. Beshay's self-serving statements[,]" there was no evidence of any threats; and (2) "the record indicate[d] that [7-Eleven] informed [Beshay Co.] of its perception that the Store had been abandoned . . . , and gave [Beshay Co.] an opportunity to respond," to which it willingly did not. Salas Op. 30:3-12.

The Beshay Parties do not argue, nor does the Court find, that these findings were clearly erroneous or manifestly unjust. Accordingly, the Court will not consider these arguments in deciding the Motion.

### B.  7-Eleven's Damages is the Sole Remaining Issue

"[T]o succeed on a breach of contract claim under New Jersey law, a plaintiff must show . . . (1) a valid contract existed, (2) . . . the defendant failed to perform under the contract, and (3) that failure to perform caused injury to plaintiff." *Webster v. Dollar General, Inc.*, 197 F. Supp. 3d 692, 704 (D.N.J. 2016). Here, 7-Eleven seeks to enforce two contracts: (1) the Franchise Agreement against Beshay Co. and (2) the Guaranty Agreement against Mr. Beshay. Counterclaims ¶¶ 19-24. As to the Franchise Agreement, 7-Eleven seeks to enforce Beshay Co.'s "obligation . . . to remit any unpaid balance on the Store's open account upon demand by 7-Eleven" after termination (also referred to as "Section 28(c)" of the Franchise Agreement). Salas Op. 30:22-25; *see also* Counterclaims ¶ 20. As to the Guaranty Agreement, 7-Eleven seeks to enforce Mr. Beshay's "unconditional[] and absolute[] guarantee[]" to "promptly" pay Beshay Co.'s liabilities under the Franchise Agreement. Counterclaims ¶¶ 20, 23.

Following the Salas Opinion, the only issue remaining before the Court is 7-Eleven's damages. As 7-Eleven notes, the Beshay Parties do not dispute the validity of the Franchise Agreement, Section 28(c), or the Guaranty Agreement. Reply at 8; *see also* 7-Eleven SOF ¶¶1-3 (describing the Agreements); Beshay Counter-SOF ¶¶1-3 (not challenging 7-Eleven's description). Nor is there a genuine dispute of material fact over whether the Section 28(c) obligations were triggered, as 7-Eleven properly terminated the Franchise Agreement and demanded payment of Beshay Co.'s unpaid balance. *See supra* Section III.A. And the Beshay Parties do not dispute that they have not paid any amount of the alleged remaining balance to 7-Eleven. This necessarily makes damages the sole element in dispute. *See Red Roof Franchising, LLC v. Patel*, 877 F. Supp. 2d 124, 134-135 (D.N.J. 2012) (granting partial summary judgment on a breach of franchise agreement claim and permitting a "separate motion for award of damages" because the plaintiff needed to "provide a full and complete accounting of damages[]").

However, the Beshay Parties argue that the Salas Opinion "denied 7-Eleven's counterclaim[s] as to the liability and the damages[,]" and thus "7-Eleven must [still] establish liability . . . ." Opp'n at 2. They make two arguments in support. Neither is convincing.

First, the Beshay Parties highlight that the Salas Opinion cited *Chong v. 7-Eleven, Inc.*, 2020 WL 1069456 (E.D. Pa. Mar. 4, 2020), when ruling on 7-Eleven's Counterclaims. *Id.* Specifically, the Salas Opinion found that:

> [Beshay Co.] disputes [7-Eleven's] calculation of the underlying balance. . . . The Court agrees that questions of fact remain with respect to [7-Eleven's] damages calculations. [7-Eleven] provides no financial breakdown as to how the final settlement amount was calculated, and there is no affirmed explanation as [to] what cut-off date applied to the calculation. Summary judgment on [7-Eleven's] [C]ounterclaims is therefore DENIED. *Cf.* [*Chong*, 2020 WL 106945], at *10 [n.]15 . . . .

8

Salas Op. 31:14-23. The Beshay Parties argue that because the *Chong* court granted summary judgment on all elements of a breach of contract claim, the Salas Opinion's citation indicates that neither liability nor damages were established here. Opp'n at 2. In its Reply, 7-Eleven argues that the *Chong* citation is meant "to compare the differences between the damages evidence 7-Eleven presented in *Chong* versus the damages evidence 7-Eleven presented when it initially moved for summary judgment in this case." Reply at 9-10.

The Court agrees with 7-Eleven. First, the *Chong* citation is cited in the context of the finding that questions of fact remained as to damages. Salas Op. 31:21-23. Further, the citation is to footnote 15, which notes that no party disputed the damages calculation, *Chong*, 2020 WL 106945, at *10 n.15, whereas here, the Beshay parties did "dispute[] 7-Eleven's calculation of the underlying balance[,]" Salas Op. 31:14-15. Thus, the straightforward reading of the *Chong* citation is that it compared *Chong*'s "detailed [and undisputed] calculations" to here, where the calculations both lacked detail and were disputed.

Second, the Beshay Parties reference the parties' June 29, 2022, joint status report, which states that the Salas Opinion "denied 7-Eleven's motion for summary judgment as to its claims because questions of fact remained concerning 7-Eleven's proof of the elements of its claims and the amount of damages." Opp'n at 2 (quoting D.E. 60). The Beshay Parties argue that this language demonstrates that "both parties agreed that [the Salas Opinion] did not establish the liability of th[e] [C]ounterclaim[s]." *Id.* In its Reply, 7-Eleven argues that "[t]he statement in the joint status report is merely a recognition that [the Salas Opinion] found 7-Eleven's proof of the amount of damages inadequate, . . . an element 7-Eleven was required to prove to prevail on summary judgment." Reply at 11 (citation omitted).

The Court agrees with 7-Eleven. Damages is an essential element of the Counterclaims, and the only element where the Salas Opinion found a genuine dispute of material fact. Additionally, the Beshay Parties cite no evidence or case law to support the proposition that the Court should forego Judge Salas's explicit and implicit findings in favor of the status report.[13]

### C. 7-Eleven is Entitled to Summary Judgment on Damages

The Salas Opinion found that a genuine dispute of material fact existed as to 7-Eleven's Counterclaims because 7-Eleven did not provide a financial breakdown of damages calculation. Salas Op. 31:17-20. 7-Eleven has now remedied this shortcoming, and the Court finds summary judgment as to 7-Eleven's damages is warranted.

7-Eleven seeks $42,123.88 in damages. Mot. at 1. To support this calculation, 7-Eleven provides detailed testimony and accounting records. First, Brian Demcher, a 7-Eleven Franchise Sale Manager, explains the parties' financial relationship: "the Franchise Agreement established a credit relationship akin to a line of credit with [Beshay Co.] referred to as the "Open Account[,]" through which "7-Eleven extended credit . . . that [Beshay Co.] could use to pay for most operating expenses of the Store . . . . The balance of the Open Account represents [Beshay Co.'s] indebtedness to 7-Eleven." D.E. 82-6 ("Demcher Decl.") ¶ 10. Then, using the information Beshay Co. was required to report to 7-Eleven daily, "7-Eleven maintained Bookkeeping Records

---

[13] 7-Eleven also argues that because Beshay Co. has "relied on identical facts and arguments both to support its own defective claims and to defend against 7-Eleven's [C]ounterclaims[,]" this "dooms the Beshay Parties' latest effort to avoid summary judgment." Reply at 7 (citing Salas Op. 23:24-25 (noting that Beshay Co.'s arguments in support of its breach of contract claim "overlap with its defense as to why the Court should deny summary judgment" on 7-Eleven's Counterclaims)). The Court agrees that this "overlap" of discarded arguments provides further support that damages is the only remaining issue. *See Chong*, 2020 WL 106945, at *10 n.13 (finding liability established on the defendant's breach of contract counterclaims where the only arguments against granting summary judgment were arguments the plaintiff "made in support of its [claims]" that the court had already found "failed to create a genuine dispute of fact").

for the Store[,]" which were then used to "prepare[] monthly Financial Summaries" for Beshay Co. *Id.* ¶ 14.  The Financial Summaries included, among other things, "the financial performance of the Store, the Store's Net Worth, and the balance of the Open Account." *Id.*  7-Eleven submitted the Store's monthly Financial Summaries from August 2016 through December 2016 (D.E. 82-7), which Demcher explains "reflect the decline of the Store's financial condition for the months preceding termination" (Demcher Decl. ¶ 18).

Demcher also details 7-Eleven's close-out procedure with Beshay Co. after it voluntarily surrendered the Store on January 11, 2017, including a third-party's audit of the Store's merchandise inventory, 7-Eleven's preparation of the January 2017 to April 2017 Financial Summaries (also provided in D.E. 82-8), and how 7-Eleven calculated the Store's ending Open Account debit balance of $42,123.88.[14]  Demcher Decl. ¶¶ 19-26; *see also* D.E. 82-9 (copy of 7-Eleven's final settlement statement to the Beshay Parties requesting $42,123.88).

The Court finds 7-Eleven has met its initial summary judgment burden.  *See New England Petrol. Ltd. P'ship v. Daibes Oil LLC*, 2018 WL 1358819, at *8 (D.N.J. Mar. 16, 2018) (granting summary judgment where "[i]n support of its damages calculations, [the p]laintiff submitted a summary of invoices . . . and two certifications under oath[]"); *Chong*, 2020 WL 106945, at *10 (granting summary judgment on 7-Eleven's breach of contract counterclaims where 7-Eleven provided "detailed calculations" as to how it calculated the unpaid balance); *Travelodge Hotels, Inc. v. Nitin*, 2016 WL 6917276, at *2 (D.N.J. Mar. 28, 2016) (finding no genuine dispute of

---

[14] The Financial Summaries track the Store's net worth, which was reported at negative $34,165.75 in the December 2016 Financial Summary.  Demcher Decl. ¶ 24.  This amount was added to $9,258.47 in expenses the Store had incurred ($3,932.24 in compensation and benefits 7-Eleven advanced on Beshay Co.'s behalf and $6,868.44 in cash and inventory variations). *Id.* ¶ 25.  In relation to other close-out calculations, Beshay Co. received a net credit to the Open Account of $1,300.34.  *Id.* ¶ 26.  After adding negative $34,165.75, negative $9,258.47, and $1,300.34, the Open Account's owed balance was $42,123.88.  *Id.* ¶¶ 26-27.

11

material fact as to damages owed where the plaintiff provided invoices detailing the outstanding amounts owed).

The burden now shifts to the Beshay Parties to identify specific facts and affirmative evidence that contradict 7-Eleven's damages calculations. *See Anderson*, 477 U.S. at 250. However, the Beshay Parties offer no evidence to the contrary. Beyond arguments that the Court cannot consider, the Beshay Parties make only conclusory statements. For example, the Opposition states that "there are facts that disprove the damage claim by 7-Eleven." Opp'n at 3. But the Court is left to guess what these "facts" are. The Beshay Parties also claim that "all the financial summaries are inaccurate" and contain "[w]rong information and wrong calculation[s] not supported by any documents." Beshay SOF Response ¶¶ 16, 23. However, the Beshay Parties do not identify what specific information is wrong, nor do they offer any alternative information, calculations, or documentation. Though the Court must view the Beshay Parties' evidence in the most favorable light, where no evidence is provided, the Court will not speculate as to what this evidence may be.[15] *See United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) (cleaned up) ("It has been oft-noted that [j]udges are not like pigs, hunting for truffles buried in the record.").

Accordingly, the Court will grant summary judgment and award 7-Eleven $42,123.88 in damages for its Counterclaims. *See Red Roof Franchising, LLC v. Patel*, 564 Fed. App'x 685, 690 (3d Cir. 2014) (affirming the lower court's grant of summary judgment where the party asserting breach of contract "introduced uncontested evidence" as to the amount of damages suffered); *Chong*, 2020 WL 106945, at *10 n.15 (granting summary judgment where 7-Eleven's detailed damages calculations were undisputed); *Daibes Oil LLC*, 2018 WL 1358819, at *9 (emphasis in

---

[15] The Beshay Parties also claim 7-Eleven owes them "approximately $40,000." Opp'n at 3. Notwithstanding that the Beshay Parties do not explain how this amount was calculated, the claims against 7-Eleven were already dismissed. *See generally* Salas Op.

12

original) (finding the non-moving party did not meet its summary judgment burden where it "failed to identify *any* evidence contradicting [the p]laintiff's damages calculations").

## IV. CONCLUSION

For the reasons stated above, the Court will **GRANT** 7-Eleven's Motion and **ENTER JUDGMENT** on 7-Eleven's Counterclaims in favor of 7-Eleven and against Beshay Co. and Mr. Beshay, jointly and severally, in the amount of $42,123.88. The Court will direct the Clerk of the Court to **CLOSE** this case. An appropriate Order accompanies this Opinion.

Dated: December 29, 2023                          Evelyn Padin
                                                  Evelyn Padin, U.S.D.J.

13